# IN THE IOWA DISTRICT COURT FOR BUENA VISTA COUNTY

| | |
|---|---|
| HARVEST INTERNATIONAL, INC.,<br><br>Plaintiffs,<br><br>v.<br><br>THE PHOENIX INSURANCE COMPANY aka TRAVELERS,<br><br>Defendant. | CASE NO. LACV033982<br><br>**PLAINTIFF'S FIRST AMENDED PETITION** |

COMES NOW the Plaintiff, Harvest International, Inc., by and through undersigned Counsel and in support of its Petition for Declaratory Judgment, states to the Court as follows:

## PARTIES and JURISDICTION

1. The Plaintiff is an Iowa Corporation with its registered office in Buena Vista County, Iowa.

2. The Defendant is a Delaware Corporation who at material times contracted with and did business in Buena Vista County, Iowa.

## BACKGROUND FACTS

3. The Plaintiff is seeking declaratory judgment from the Court to determine whether four separate claims for insurance benefits are covered under an insurance policy issued by the Defendant to the Plaintiff.

4. Plaintiff had a policy with Defendant, policy number Y-630-7K9333579-PHX-19, which covered Plaintiff from April 2, 2019 to April 2, 2020.

5. Plaintiff also had a policy with Defendant which covered Plaintiff from April 2, 2020 to April 2, 2021, as policy number Y-630-6P236457-PHX-20.

6. Plaintiff has made demand upon the Defendant for coverage of its defense of a

1

suit filed by Milford E. Friesen and Arlyn Friesen against Plaintiff Harvest International, Inc. in the United States District Court for the Southern District of Iowa being known as Case No. 1-20-cv-14 (hereinafter the "federal petition").

7. Defendant refused said demand for coverage of the claims and for the legal defense of the action.

8. Plaintiff is incurring legal expenses which have exceeded the deductible on the applicable policy.

9. Defendant refused and continues to refuse coverage of the legal defense of the Plaintiff in the Federal Petition.

10. Plaintiff herein in continues to incur legal expenses.

11. Time is of the essence for the determination of whether the claims would have coverage and whether the carrier has a duty to defend the Plaintiff in the action brought in the United States District Court by Milford Friesen and Arlyn Friesen.

## THE PANDEMIC AND VIRUS EXCLUSION

12. Section C.1.j.(1) of the Deluxe Property Coverage Form sets out an exclusion purporting to preclude coverage resulting from:

> j. **Virus or Bacteria**
> (1) Any virus, bacterium, or other micro-organism that induces or is capable of inducing physical distress, illness or disease.

13. The exclusion itself does not mention the word the "pandemic" or reference a global pandemic.

14. In December 2019, the first case of COVID-19 was identified in the Chinese city of Wuhan.[1]

15. On March 11, 2020, the World Health Organization declared COVID-19 a pandemic.[2]

16. On March 13, 2020, the United States federal government declared a national emergency.[3]

17. On March 9, 2020, Illinois Governor JB Pritzker issued a Gubernatorial Disaster Proclamation regarding the national emergency and the COVID-19 pandemic.[4]

18. As a result of the COVID-19 pandemic, national emergency, and state emergency, businesses that provided necessary parts to Plaintiff closed, specifically Bucher Hydraulics for the period of March 21 to April 7, 2020.

19. The closure of those businesses resulted in the necessary suspension of Plaintiff's operations.

20. This caused "direct physical loss of or damage to" Plaintiff and Plaintiff's property as covered by the applicable policy.

### DEFENDANT'S FURTHER DENIAL OF COVERAGE

21. In a separate and distinct claim, Plaintiff presented to Defendant for damages to a planter bar caused when it slipped off a semi-trailer while being loaded at the Plaintiff's facility. This incident caused damage to a customer's planter (hereinafter the "planter bar damage").

---

[1] https://www.who.int/news/item/27-04-2020-who-timeline---covid-19
[2] *See id.*
[3] https://bit.ly/3w0gJHS A Letter on the Continuation of the National Emergency Concerning the Coronavirus Disease 2019 (COVID-19) Pandemic.
[4] https://bit.ly/31TzA2l Gubernatorial Disaster Proclamation, March 9, 2020.

22. Defendant denied coverage for the property damage that caused by Plaintiff's alleged negligence to a customer's planter without a reasonable basis.

23. Defendant also denied coverage for a fourth matter involving the damage to a customer's land and crops caused by an alleged design or manufacturing defect of a planter (hereinafter the "property and crop damage").

24. Plaintiff presented the claim for property damage to Defendant but defendant denied coverage although Plaintiff believes that the applicable policy would cover such a claim if valid.

## DECLARATORY JUDGMENT IS APPROPRIATE RELIEF

25. Four disputes exist between the Plaintiff and Defendant herein on the application of the applicable policy definitions and the rights and duties of the parties under the applicable policy as laid out herein.

26. These controversies cannot be determined except in this proceeding.

27. These controversies are proper for determination by declaratory judgment to adjudicate the issues of whether the applicable policy affords coverage of the controversies and a duty by Defendant to defend/cover the Plaintiff.

28. The questions of whether Harvest International, Inc. is entitled to insurance coverage and a legal defense under the controlling insurance policies, whether Harvest International, Inc. is entitled to coverage for Business Income Loss, and whether Harvest International, Inc. is entitled to coverage for property damage claims are appropriate for declaratory relief pursuant to Iowa R.Civ.P. 1.1101 and the granting of such relief would terminate the legal disputes that have given rise to the issues.

29. "[T]he purpose of the declaratory judgment is to resolve uncertainties and controversies before obligations are repudiated, rights are invaded, or wrongs are committed." *Dubuque Policemen's Protective Ass'n v. City of Dubuque*, 552 N.W.2d 603, 607 (Iowa 1996) (quoting 22A Am.Jur.2d *Declaratory Judgments* § 1, at 670).

30. To determine whether declaratory judgment is proper, Iowa courts first determine whether a justiciable controversy exists. *Green v. Shama*, 217 N.W.2d 547, 551 (Iowa 1974).

31. Here, Harvest International, Inc. seeks a declaratory judgment on the issues outlined in Paragraph 29 and stated herein.

32. A declaratory judgment would resolve whether Harvest International, Inc. is entitled to coverage and a defense under the policies of insurance identified and maintained with the Defendant for the issues set forth herein.

### COUNT I – DECLARATORY JUDGMENT – DUTY TO DEFEND AGAINST PERSONAL AND ADVERTISING INJURY
(*As to Federal Claims Pending Against Plaintiff*)

33. Plaintiff reincorporates and restates all allegations of its Petition as if fully set forth herein.

34. The Plaintiff hereby requests the Court enter a declaratory judgment on whether or not insurance coverage exists for the Plaintiff for the damages alleged in the Federal Petition.

35. The alleged damages claimed arise out of Harvest International making and/or selling products allegedly without compliance to a licensing agreement.

36. Damages caused by allegedly marketing and representing to customers that the UltraPlant toolbar is a Milford Friesen toolbar;

37. The plaintiffs in the federal action brought a claim for trade secrets against

Plaintiff Harvest International, Inc. These claims are the subject of a Motion to Dismiss that has been filed by Harvest in the Federal action.

38. Commercial General Liability Coverage Form, Section V(18) regarding personal and advertising injury means "personal injury" or "advertising injury" and pursuant to Commercial General Liability, Section V(19) "personal injury" is defined as follows:

> 19. "Personal injury":
>   a. Means injury, other than "advertising injury", caused by one or more of the following offenses:
>      (1) False arrest, detention or imprisonment;
>      (2) Malicious prosecution;
>      (3) The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, provided that the wrongful eviction, wrongful entry or invasion of the right of private occupancy is committed by or on behalf of the owner, landlord or lessor of that room, dwelling or premises;
>      (4) Oral or written publication, including publication by electronic means, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services, provided that the claim is made or the "suit" is brought by a person or organization that claims to have been slandered or libeled, or that claims to have had its goods, products or services disparaged; or
>      (5) Oral or written publication, including publication by electronic means, of material that:
>         (a) Appropriates a person's name, voice, photograph or likeness; or
>         (b) Unreasonably places a person in a false light.

Emphasis added.

39. Pursuant to Commercial General Liability, Section V(2), "advertising injury" is defined as follows:

> 2. "Advertising injury":
>    a. Means injury caused by one or more of the following offenses:
>       (1) Oral or written publication, including publication by electronic means, of material in your "advertisement" that slanders or libels a person or organization or disparages a person's or organization's goods, products or services, provided that the claim is made or the "suit" is brought by a person or organization that claims to have been slandered or libeled, or that claims to have had its goods, products or services disparaged;
>       (2) Oral or written publication, including publication by electronic means, of material in your "advertisement" that:
>          (a) Appropriates a person's name, voice, photograph or likeness; or
>          (b) Unreasonably places a person in a false light; or
>       (3) Infringement of copyright, "title" or "slogan" in your "advertisement", provided that the claim is made or the "suit" is brought by a person or organization that claims ownership of such copyright, "title" or "slogan".
>    b. Includes "bodily injury" caused by one or more of the offenses described in Paragraph a. above.

Emphasis added.

40. Additionally, Travelers has a duty to defend and provide coverage to Harvest International, as described in Coverage B(1)(a) in the Commercial General Liability Coverage Form:

> **COVERAGE B – PERSONAL AND ADVERTISING INJURY LIABILITY**
> 1. **Insuring Agreement**
>    a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result. But:

41. Moreover, the federal lawsuit is in part for personal or advertising injury, as defined by the policy.

42. The alleged publication orally and written was sufficient for the Friesens in the federal action to perceive themselves as being entitled to damage for the alleged statements by Harvest International, Inc.

43. Publication is not a defined term in the insurance policy and any ambiguity in the policy must be interpreted in favor of the insured. *United Fire and Cas. Co. V. Victoria*, 576 N.W.2d 118, 121 (Iowa 1998).

44. It is no defense for the carrier to allege audience size because the word publication is not defined within the applicable policy and could merely be a communication to a third party just the same as the word is used in defamation cases. *See Kiner v. Reliance Ins. Co.*, 463 N.W.2d 9 (Iowa 1990) (discussing publication to a single person); *See Newell v. JDS Holdings, L.L.C.*, 834 N.W.2d 463, 470 (Iowa Ct. App. 2013) (defining publication as communication of statements to one or more third parties).

45. The allegations by the Friesens are sufficient basis of publication of oral or

8

written statements which would be covered under the applicable policy purchased by Plaintiff from the Defendant.

46. Travelers seeks to exclude coverage merely because there are allegations within the federal petition filed by Milford Friesen and Arlyn Friesen alleging violation of intellectual property rights. While there is an exclusion in the policy for intellectual property rights the name Milford Friesen in and of itself as alleged in the federal petition does not invoke intellectual property rights but rather advertising injury and personal injury claims falling within the definitions of the policy coverage.

47. Because the alleged conduct creating damages falls within both of the definitions of intellectual property and of personal and advertising injury, Harvest International is entitled to coverage and a defense by Travelers.

48. The allegations of noncompliance with the licensing agreement causing damages said potential damages are covered under the personal injury provisions of the applicable policy. The definition of personal injury includes the types of damages alleged in the Petition by Milford Friesen and Arlyn Friesen. Travelers cannot exclude coverage based on an exclusionary clause that only generally applies rather than the coverage that specifically applies for personal injury. Contracts must be read to cover losses that are specifically contemplated, and there may not be grounds for use of general exclusionary language to exclude a specific covered cause of loss. *Wells' Dairy, Inc. v. Travelers Indem. Co.*, 336 F. Supp. 2d 906 (N.D. Iowa 2004), citing *Employers Mut. Cas. Co. v. Cedar Rapids Television Co.*, 552 N.W.2d 639, 641 (Iowa 1996).

49. Additionally, the Friesens claim Harvest International converted tangible drawings or designs for an improper use. This claim is clearly covered by the applicable policy.

50. Section V(23), "Property damage" is defined as follows:

> **23.** "Property damage" means:
> a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use will be deemed to occur at the time of the physical injury that caused it; or
> b. Loss of use of tangible property that is not physically injured. All such loss of use will be deemed to occur at the time of the "occurrence" that caused it.

51. The alleged conversion of drawings/designs constitutes property damage as defined by the policy and therefore Travelers has an obligation to provide coverage and a defense to the claims.

52. Moreover, Travelers has a duty to defend and provide coverage to the Plaintiff under Coverage A(1)(a) in the Commercial General Liability Coverage Form for the following reasons:

> **1. Insuring Agreement**
> a. We will pay those sums that you become legally obligated to pay as "limited covered pollution| costs" to which this insurance applies. We will have the right and duty to defend you against any "suit" seeking those "limited covered pollution costs". However, we will have no duty to defend you against any "suit" seeking "limited covered pollution costs" to which this insurance does not apply. We may at our discretion investigate any discharge, release or escape of "pollutants" and settle any claim or "suit" that may result.

53. A contract liability exclusion does not apply to the conversion claim. Section I(2)(b) states that the contract liability exclusion does not apply to "liability for damages that the insured would have in the absence of the contract or agreement."

54. The alleged liability for conversion, would lie in common law regardless of any

contract that Harvest International may have entered into with Milford Friesen or Arlyn Friesen.

55. Accordingly, the policy must cover the alleged loss and provide a defense of those claims.

WHEREFORE, Plaintiff respectfully requests the Court enter an Order directing the Defendant to provide the legal defense of those claims to the natural conclusion of the action commenced in federal court by Milford Friesen and Arlyn Friesen and for such other and further relief as this Court deems just and necessary in the premises.

## COUNT II – DECLARATORY JUDGMENT - BUSINESS INTERRUPTION

56. Plaintiff reincorporates and restates all allegations of its Petition as if fully set forth herein.

57. Plaintiff claims damages that are covered under the business income coverage provided in the insurance policy Plaintiff purchased and paid premiums on. Plaintiff's policy specifically covers loss of business income and states:

```
BUSINESS INCOME:
    As respects Business Income Coverage, for which no other deductible is
    stated above or in the coverage description, a  72 hour deductible applies.
```

58. Plaintiff's policy further covers loss of business income in the Deluxe Business Income (and Extra Expense) Coverage Form.

> **A. COVERAGE**
> We will pay for:
> - The actual loss of Business Income you sustain due to the necessary "suspension" of your "operations" during the "period of restoration"; and

59. The phrase "period of restoration" is defined by the policy as:

4. **"Period of Restoration"**
   a. "Period of Restoration" means the period of time that:
      (1) (a) For Business Income coverage, begins once the number of hours of the applicable Business Income hour deductible, if any, expires following the time of direct physical loss or damage; and

      (b) For Extra Expense coverage begins immediately after the time of direct physical loss or damage;

      caused by or resulting from a Covered Cause of Loss at the described premises; and

      (2) Ends on the earlier of:
         (a) The date when the property at the described premises should be repaired, rebuilt or replaced with reasonable speed and similar quality; or
         (b) The date when business is resumed at a new permanent location.

60. Plaintiff suspended its operations due to direct physical loss of its property caused by a covered cause of loss at its insured premises, as required to trigger coverage under the policy.

61. Defendant denied coverage under the policy.

62. At the time Plaintiff purchased the policy, Defendant knew or should have known that courts had held on numerous occasions that a condition making it impossible to use property for its intended use constituted "physical loss or damage to property."

WHEREFORE, Plaintiff respectfully requests the Court enter an Order directing the Defendant to cover Plaintiff's claim for business interruption caused as a result of direct physical

12

loss or damage and for other such relief as the Court deems just and equitable in the premises and for such other and further relief as this Court deems just and necessary in the premises.

## COUNT III – DECLARATORY JUDGMENT - PROPERTY DAMAGE
*(As to the Alleged Planter Bar Damage)*

63. Plaintiff reincorporates and restates all allegations of its Petition as if fully set forth herein.

64. Plaintiff's policy specifically covers Personal Property in Transit Outside under Deluxe Property Coverage Form (4)(r), which states:

> r. **Personal Property In Transit Outside of the Coverage Territory**
>
> (1) Unless otherwise indicated in the Declarations or by endorsement, you may extend the insurance provided for Personal Property in Transit in Section A.1.e. (including any mode of transportation or type of shipment exclusion), to apply to Your Business Personal Property and Personal Property of Others in your care, custody or control in transit anywhere in the world outside of the Coverage Territory provided that no sanction, embargo or similar regulation imposed by the United States of America prohibits us from covering the loss or damage.
>
> (2) This Extension also applies to Covered Property in transit which is in the custody of your officers or employees.

65. "Business Personal Property" is defined in Section A.1.b. to include "stock," which is defined in Section J.13.

> 13. **"Stock"** means merchandise held in storage or for sale, raw materials and in-process or finished goods, including supplies used in their packing or shipping.

66. The policy covers Plaintiff's claims, particularly as the policy contains the above cited language.

67. Defend denied Plaintiff coverage for its claim under the above quoted section of the policy.

WHEREFORE, Plaintiff respectfully requests the Court enter an Order directing the Defendant to defend Plaintiff against claims asserted against it for the alleged damage to the planter bar damage and for such other and further relief as this Court deems just and necessary in the premises.

### COUNT IV – DECLARATORY JUDGMENT - PROPERTY DAMAGE
*(As to the Alleged Property and Crop Damage)*

68. Plaintiff reincorporates and restates all allegations of its Petition as if fully set forth herein.

69. Further, Deluxe Property Coverage Form, Section G.4.i.:

> i. We may elect to defend you against suits arising from claims of owners of property. We will do this at our expense.

70. Deluxe Property Coverage Form, Section G.4.j. states:

> j. We will pay for covered loss or damage within 30 days after we receive the sworn proof of loss, if:
> (1) You have complied with all of the terms of this Coverage Part; and
> (2) (a) We have reached agreement with you on the amount of loss; or
> (b) An appraisal award has been made.

71. Section G.4.a. sets forth the payments for loss as follows:

> 4. Loss Payment
>    a. In the event of loss or damage covered by this Coverage Form, at our option, we will either:
>       (1) Pay the value of lost or damaged property;
>       (2) Pay the cost of repairing or replacing the lost or damaged property subject to b., c., d. and e. below;
>       (3) Take all or any part of the property at an agreed or appraised value; or
>
>       (4) Repair, rebuild, or replace the property with other property of like kind and quality subject to b., c., d. and e. below.

72. Pursuant to the policy, specifically the parts identified above, the policy covers Plaintiff's claims.

73. Defendant denied Plaintiff coverage for its claim under the above quoted section of the policy.

WHEREFORE, Plaintiff respectfully requests the Court enter an Order directing the Defendant to defend Plaintiff against claims arising from the alleged property and crop damage and for such other and further relief as this Court deems just and necessary in the premises.

## COUNT V - DUTY TO DEFEND

74. Plaintiff reincorporates and restates all allegations of its Petition as if fully set forth herein.

75. An insurers duty to defend is broader than the insurers duty to indemnify due to the equitable principle that it would be impossible to determine what basis the Plaintiff might recover under until the action is completely adjudicated. *Emp'rs Mut. Cas. Co. v. Cedar Rapids*

15

*TV Co.*, 552 N.W.2d 639, 642 (Iowa 1996).

76. The duty to defend arises by a carrier when there is a potential or possible liability for the insured. *Id.* The insurer must look at the facts pled in the Petition by a Plaintiff against an insured but may not rely upon legal theories pled in a complaint to determine whether there is potential coverage. The facts are determinative of whether or not coverage and duty to defend is required under the applicable policy. See *Id.* Insurance coverage is determined by the type of conduct an insured engages in rather than the Plaintiffs' choice of legal theories for recovery. See *Id.* Accordingly, the facts and circumstances of the Milford Friesen and Arlyn Friesen claims against Harvest International, Inc. are sufficient to afford Harvest International coverage of the claims under the applicable policy and a defense in the action.

WHEREFORE, Plaintiff respectfully requests the Court enter an Order directing the Defendant to:

A. Provide the legal defense of those claims to the natural conclusion of the action commenced in federal court by Milford Friesen and Arlyn Friesen;

B. Cover Plaintiff's claim for business interruption caused as a result of direct physical loss or damage and for other such relief as the Court deems just and equitable in the premises;

C. Defend Plaintiff against claims asserted against it for alleged planter bar damage;

D. Defend Plaintiff against claims asserted against it for alleged property and crop damage; and

E. For such other and further relief as this Court deems just and necessary in the premises.

## COUNT VI – BREACH OF CONTRACT
*(As to Doctrine of Reasonable Expectations)*

77. Plaintiff reincorporates and restates all allegations of its Petition as if fully set forth herein.

78. In regard to an occurrence, claim, or suit, the policy issued by the Defendant states:

> **COVERAGE B – PERSONAL AND ADVERTISING INJURY LIABILITY**
> 1. **Insuring Agreement**
>    a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result. But:
>
> **SECTION I – EMPLOYEE BENEFITS LIABILITY COVERAGE**
> 1. **Insuring Agreement**
>    a. We will pay those sums that the insured becomes legally obligated to pay as damages because of loss to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for loss to which this insurance does not apply. We may, at our discretion, investigate any negligent act, error or omission and settle any claim or "suit" that may result. But:

> **SECTION III – LIMITS OF INSURANCE**
> 1. The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:
>    a. Insureds;
>    b. Claims made or "suits" brought; or
>    c. Persons or organizations making claims or bringing "suits".

79. The term "right and duty to defend the insured" is not defined in the policy.

80. Plaintiff was justified in believing Defendant would defend it against claims brought against it in court because Defendant had:

    a. Accepted Plaintiff's application;

    b. Delivered the policy to Plaintiff;

    c. Directly billed Plaintiff for policy premiums;

    d. Collected premiums directly from Plaintiff for the policy; and

    e. Accepted notice of all prior claims against the policy.

81. Defendant never expressly advised Plaintiff that it would not defend Plaintiff against lawsuits against it, and to claim otherwise is an attempt to enforce the policy in a way which would defeat Plaintiff's reasonable expectations under the policy.

82. Paragraph (B)(1)(a) of the policy issued by the Defendant

83. Said ambiguity must be resolved in accordance with the objectively reasonable expectations of Plaintiff.

WHEREFORE, Plaintiff asks this court to hold that the policy requires Defendant to defend it against suits and claims brought against it, and for such further and other remedies this Court deems just and necessary under the premises.

## COUNT VII – BREACH OF CONTRACT GENERALLY

84. Plaintiff reincorporates and restates all allegations of its Petition as if fully set forth herein.

85. Defendant entered into a written agreement with Plaintiff.

86. All the conditions precedent have been performed by Plaintiff.

87. Defendant has not performed the agreement on its part in that Defendant has failed and refuses to defendant Plaintiff against claims against it asserted in the federal petition.

88. On December 28, 2020, Plaintiff demanded of Defendant that it defend Plaintiff against the claims asserted against it by for alleged planter bar damage and alleged property and crop damage, but Defendant refused and still refuses to do so.

89. On January 5, 2021, Plaintiff demanded of Defendant that it proved Plaintiff coverage for loss experienced due to its business interruption, but Defendant refused and still refuses to do so.

90. As a result of this breach of the agreement by Defendant, Plaintiff suffered and continues to suffer damages.

WHEREFORE Plaintiff requests this Court require Defendant to cover Plaintiff's losses, defend Plaintiff against the claims asserted against it, provide Plaintiff coverage as laid out in the applicable policy, and for such other and further relief as the Court deems just and necessary in the premises.

## COUNT VIII – BAD FAITH

91. Plaintiff reincorporates and restates all allegations of its Petition as if fully set forth herein.

92. Defendant knew or had reason to know that its refusal to defend Plaintiff from the claims against it was without reasonable basis.

93. Plaintiff has suffered damages as a result of Defendant's bad faith acts including, but not limited to, monetary damages.

94. Plaintiff seeks an award of punitive damages pursuant to Iowa Code § 668A based on Defendant's willful and wanton disregard for the rights of Plaintiff.

WHEREFORE Plaintiff respectfully requests this Court find Defendant acted in bad faith in failing to provide coverage to Plaintiff as laid out in the applicable policy, require Defendant to provide Plaintiff coverage as laid out in the applicable policy, for punitive damages as allowed by statute, and for such other and further relief as this Court deems just and necessary in the premises.

Respectfully submitted,

ABBOTT OSBORN JACOBS PLC

By: _____
BRETT T. OSBORN   AT0005956
974 - 73rd Street, Suite 20
Des Moines, IA 50324
Telephone (515) 223-6000
Facsimile (515) 223-6011
Email: bosborn@midwestlawgroup.com
ATTORNEY FOR PLAINTIFF